IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK D. CONNER,<br><br>    Petitioner,<br><br>    v.<br><br>ROBERT L. AYERS, Warden,<br><br>    Respondent.<br>_____/ | No. C-08-5781 CRB (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

    Petitioner, a state prisoner incarcerated at the California Substance Abuse Treatment Facility in Corcoran, California, has filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging the California Board of Parole Hearings' ("B.P.H.") refusal to grant him parole at his second parole suitability hearing held on October 29, 2007. Doc. #1; see Doc. #7-2 at 5. On March 23, 2009, the Court issued an Order to Show Cause why the writ should not be granted. Doc. #2. Respondent filed an Answer, Doc. #7, and Petitioner filed a Traverse. Doc. ## 8 & 9.

    After the matter was submitted, on April 22, 2010, the Ninth Circuit issued its decision in Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc), which addressed important issues relating to federal habeas review of BPH decisions denying parole to California state prisoners. On May 4, 2010, the Court ordered the parties to file supplemental briefing

1 explaining their views of how the Hayward en banc decision applies to the facts presented in
2 Petitioner's challenge to BPH's decision denying him parole. Doc. #16. Respondent filed
3 supplemental briefing on June 3, 2010, Doc. #17; Petitioner filed his on June 28, 2010. Doc.
4 #19.

Having considered all of the papers filed by the parties, the Court DENIES the Petition.

## BACKGROUND

In 1986, petitioner pled guilty to first-degree murder in Los Angeles County Superior Court and was sentenced to an indeterminate term of twenty-five years to life in state prison. At his second parole suitability hearing held on October 29, 2007, BPH read the following summary of the commitment offense into the record:

> On October 26, 1986, in the county of Los Angeles the crime of attempted murder in . . . violation of Penal Code section 664[/]187(a) felony was committed by [Petitioner] and two companions who did willfully, unlawfully and with malice assault[] and rob[] Kenneth Williams. Following the assault and robbery, the victim lapsed into a coma and on February 20, 1988 Kenneth Williams died as a result [of the] injuries [he] sustained[,] having [never] regained consciousness. An eyewitness to the offense observed the three suspects surround the victim. One of the suspects . . . demand[ed] money from the victim. Immediately following the demand all three suspects began assaulting the victim, repeatedly striking him about the body. The victim fell to the ground and was continually kicked and beaten. [Petitioner] was observed to raise the victim's head from the ground and slam it to the sidewalk. As the victim laid [sic] unconscious, [Petitioner] and his companions proceeded to rifle his pockets, taking his property and fleeing on foot. [Petitioner] was originally charged . . . with attempted murder, robbery and assault to create bodily injury and with a deadly weapon . . . . [Petitioner pled guilty to these charges.] On April 17, 1987 probation was denied, Petitioner was sentenced to a total of eight years in state prison. However, due to the death of the victim, Kenneth Williams, on February 20, 1988, the present offense of murder was filed against [Petitioner].

Doc. #7-2 at 36–38.

Following this factual summary, BPH conducted the evidentiary portion of the hearing. At the conclusion of the hearing, BPH found that Petitioner was not yet suitable for parole and

2

would pose a current unreasonable risk of danger to society or threat to public safety if released from prison. Doc. #7-3 at 47. After he was denied parole, Petitioner filed a petition for writ of habeas corpus in Los Angeles County Superior Court, which was denied on April 9, 2008. Doc. #7-4 at 2–3. The California Court of Appeal summarily denied a petition filed there on May 8, 2008. Doc. #7-8 at 2. The California Supreme Court summarily denied a petition filed there on November 12, 2008. Doc. #7-13 at 2. The instant federal Petition for a Writ of Habeas Corpus followed. Doc. #1.

**DISCUSSION**

A.  Standard of Review

In Hayward, the Ninth Circuit explained the law in California as it relates to parole suitability determinations:

> The California parole statute provides that the Board of Prison Terms "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual." The crucial determinant of whether the prisoner gets parole in California is "consideration of the public safety."
>
> In California, when a prisoner receives an indeterminate sentence of fifteen years to life, the "indeterminate sentence is in legal effect a sentence for the maximum term, subject only to the ameliorative power of the [parole authority] to set a lesser term." Under the California parole scheme, the prisoner has a right to a parole hearing and various procedural guarantees and rights before, at, and after the hearing; a right to subsequent hearings at set intervals if the Board of Prison Terms turns him down for parole; and a right to a written explanation if the Governor exercises his authority to overturn the Board of Prison Terms' recommendation for parole. Under California law, denial of parole must be supported by "some evidence," but review of the [decision to deny parole] is "extremely deferential."

Hayward, 603 F.3d at 561–62 (footnotes and citations omitted).

The court further explained that:

> [s]ubsequent to Hayward's denial of parole, and subsequent to our oral argument in this case, the California Supreme Court established in two decisions, In re Lawrence . . . and In re

3

> Shaputis, . . . that as a matter of state law, "some evidence" of future dangerousness is indeed a state sine qua non for denial of parole in California. We delayed our decision in this case so that we could study those decisions and the supplemental briefs by counsel addressing them. As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." . . . There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." . . . The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. . . . Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety."

Hayward, 603 F.3d at 562 (footnotes and citations omitted).

After providing this background on California law as it applies to parole suitability determinations, the court then explained the role of a federal district court charged with reviewing the decision of either BPH or the governor in denying a prisoner parole. According to the Ninth Circuit, this Court must decide whether a decision "rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 562–63 (citations omitted); see also Cooke v. Solis, 606 F.3d 1206, 1208, n. 2 & 1213 (9th Cir. 2010) (applying Hayward and explicitly rejecting the state's argument that "the constraints imposed by [the Antiterrorism and Effective Death Penalty Act ("AEDPA")] preclude federal habeas relief" on petitioner's claim; noting that in Hayward, the court "held that due process challenges to California courts' application of the 'some evidence' requirement are cognizable on federal habeas review under AEDPA").

B.  California Law Regarding Parole Suitability Determinations

When assessing whether BPH's suitability determination was supported by "some evidence," this Court's analysis is framed by California's "regulatory, statutory and constitutional provisions that govern parole decisions . . . ." Cooke, 606 F.3d at 1213 (citing

4

In re Rosenkrantz, 29 Cal. 4th 616 (2002)); see Hayward, 603 F.3d at 561–62.  Under California law, prisoners serving indeterminate life sentences, like Petitioner, become eligible for parole after serving minimum terms of confinement required by statute.  In re Dannenberg, 34 Cal. 4th 1061, 1069–70 (2005).  Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  Cal. Code Regs. tit. 15, § 2402(a).  In making this determination, BPH must consider various factors, including the prisoner's social history, past and present mental state, past criminal history, the base and other commitment offenses, including behavior before, during and after the crime, past and present attitude toward the crime and any other information that bears on the prisoner's suitability for release.  See Cal. Code Regs. tit. 15, § 2402(b)–(d).

In considering the commitment offense, BPH must determine whether "the prisoner committed the offense in an especially heinous, atrocious or cruel manner."  Cal. Code Regs. tit. 15, § 2402(c)(1).  The factors to be considered in making that determination include: "(A) Multiple victims were attacked, injured or killed in the same or separate incidents; (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) The victim was abused, defiled or mutilated during or after the offense; (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; (E) The motive for the crime is inexplicable or very trivial in relation to the offense."  Id.

According to the California Supreme Court, "the core statutory determination entrusted to the Board and the Governor [in determining a prisoner's parole suitability] is whether the inmate poses a current threat to public safety . . . ."  In re Lawrence, 44 Cal. 4th 1181, 1191 (2008).  And, "the core determination of 'public safety' under the statute and corresponding regulations involves an assessment of an inmate's current dangerousness."  Id. at 1205 (emphasis in original) (citing Rosenkrantz, 29 Cal. 4th 616 & Dannenberg, 34 Cal. 4th 1061).  The court further explained that:

5

> a parole release decision authorizes the Board (and the Governor) to identify and weigh only the factors relevant to predicting "whether the inmate will be able to live in society without committing additional antisocial acts." . . . These factors are designed to guide an assessment of the inmate's threat to society, if released, and hence could not logically relate to anything but the threat currently posed by the inmate.

Lawrence, 44 Cal. 4th at 1205–06 (citations omitted). The relevant inquiry, therefore, is:

> whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Shaputis, 44 Cal. 4th 1241, 1254–55 (2008).

The evidence of current dangerousness "must have some indicia of reliability." In re Scott, 119 Cal. App. 4th 871, 899 (2004) (Scott I). Indeed, "the 'some evidence' test may be understood as meaning that suitability determinations must have some rational basis in fact." In re Scott, 133 Cal. App. 4th 573, 590, n. 6 (2005) (Scott II); see also Cooke, 606 F.3d at 1216 (holding that the state court decision upholding the denial of parole was "'"based on an unreasonable determination of the facts in light of the evidence[],"'" Hayward, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(2))," and therefore finding petitioner entitled to habeas relief because "[n]othing in the record supports the state court's finding that there was 'some evidence' in addition to the circumstances of the commitment offense to support the Board's denial of petitioner's parole").

C.   Analysis of Petitioner's Claim

Petitioner claims he is entitled to federal habeas relief because BPH's decision finding him unsuitable for parole was not supported by "some evidence." Doc. ## 1 & 19. Petitioner also claims that BPH's decision to issue a five-year denial likewise was not supported by "some evidence." Id. After careful review of the law and the evidence, and as set forth below, this Court cannot say that the state court's approval of BPH's decision to deny

6

Petitioner parole was an unreasonable application of the California "some evidence" standard, nor that it was based on an unreasonable determination of the facts in light of the evidence.[1] See Hayward, 603 F.3d at 563. Petitioner therefore is not entitled to federal habeas relief.

As an initial matter, the record shows that, at Petitioner's October 29, 2007 parole suitability hearing, BPH afforded Petitioner and his counsel an opportunity to speak and present Petitioner's case, gave them time to review documents relevant to Petitioner's case and provided them with a reasoned decision in denying parole. Doc. #7-2 at 34–36; Doc. #7-3 at 41–46 & 47–56. The record also shows that BPH relied on several circumstances tending to show unsuitability for parole and that these circumstances formed the basis for its conclusion that Petitioner was not yet suitable for parole and would pose a current unreasonable risk of danger to society or threat to public safety if released from prison. Doc. #7-3 at 47–56; see Lawrence, 44 Cal. 4th at 1191, 1205; Cal. Code Regs. tit. 15, § 2402(a) (stating that a prisoner determined to be an unreasonable risk to society shall be denied parole).

BPH explained its decision as follows:

> This crime was carried out in an especially cruel and callous manner. Eyewitnesses said that on October 26, 1986 [Petitioner] and two co-participants surrounded the victim, Kenneth Williams, [a] 25 year old male who was outnumbered and particularly vulnerable as he was unarmed. . . . [Petitioner] was observed to raise the victim's head from the ground and slam it to the sidewalk. . . . [Petitioner has] an unstable social history and he was sexually, physically abused . . . between the ages of six and 15 years old. He has a history of violence and assaults, a prior criminality that shows an escalating pattern of criminal conduct. And he has failed society's previous attempts to correct his criminality which includes time in county jail and juvenile hall, as a juvenile he was convicted of robbery, and also probation. [Petitioner] was on probation at the time of the commitment offense. [Petitioner] was also convicted of vehicle theft and was drug dealing by his own admission. . . . . As to misconduct [while in prison], [Petitioner] has nine serious disciplinary violations. . . . The most recent in 2003 for delay of count. Prior to that [in] 2000 for threatening staff, and prior [serious disciplinary violations] do

---

[1] In light of this conclusion, Petitioner's argument that a five-year denial was not supported by "some evidence" necessarily fails as well.

> show force and violence. . . . As to acceptable employment plans, [Petitioner] presented no job offers to this Panel.

Doc. #7-3 at 47-50. BPH also spoke at length regarding Petitioner's past and present attitude toward the commitment offense:

> [Petitioner] was observed to raise the victim's head from the ground and slam it to the sidewalk. However, today [Petitioner] says he has no recollection of having done so. . . . And [Petitioner] said in testimony today that he did not intend to hurt [the victim]. He said he intended to rob him, that he had no explanation for this vicious, prolonged attack. . . . [Petitioner] had a clear opportunity to cease, but he continued. He repeatedly punched and kicked the victim. . . . [Petitioner today denies] his intent to harm this victim. And it's very contradictory to what you actually did and some of the other things you have said. In fact, that is the most alarming thing this Panel finds today is that your testimony today has been filled with contradictions. Basically you deflected some of the questions and you deny many things today. But this Panel is also looking at your history, your full history of documentation and what you have said in the past and trying to reconcile it with what you said today. . . . You deny your gang involvement. . . . [But] it's not clear why you would be trying to impress companions unless there was a gang type affiliation that you had with them. So there is a contradiction there, sir. Also, this Panel finds you were contradictory in stating that you were trying to take care of your mother to protect her from your stepfather, and yet that's contradicted by you[] saying that you left, you lived on the streets. You said you came home at night at one point to protect her from your stepfather but on the other hand you also said that you were out running the streets at night. And you did admit to selling drugs, but on the other hand you said you were only selling marijuana. You also said you understand yourself fully now . . . [but] this Panel does not believe that you understand yourself fully now. We feel that you need to gain far more insight into your offense, why you did this brutal attack on an individual whom you say you just intended to rob, why you actually carried this through. . . . You clearly need a significant period of self-help program. You need to not just warm the bench but take an active part in the programming . . . as you have started to do. But you clearly need to become more engaged because two years in [Narcotics Anonymous] without being able to even recite a step is just indicative that this Panel must question how much you're actually absorbing from any of your programming.

Doc. #7-3 at 51–54; see Cal. Code Regs. tit. 15, § 2402(b) (in making parole suitability determination, BPH must consider Petitioner's social history, past and present mental state, past criminal history, the base and other commitment offenses, including behavior before,

8

during and after the crime, and his past and present attitude toward the crime).

After reviewing the petition filed in superior court challenging BPH's decision to deny Petitioner parole, the court "conclude[d] that the record contains 'some evidence' to support the Board's finding that the Petitioner presents an unreasonable risk of danger to society and is unsuitable for parole. Cal. Code Reg. Tit. 15, § 2402; In re Rosenkrantz (2002) 29 Cal. 4th 616, 667."[2] Doc. #7-4 at 2. Specifically, the court relied on the circumstances of the commitment offense and Petitioner's "criminal history, including acts of assault at an early age. Cal. Code Regs. Tit. 15, § 2402, subd.(c)(2)." Id. at 2–3. The court also noted Petitioner committed robbery as a juvenile, as well as car theft and violat[ed] probation as an adult." Id. at 3. Finally, the court noted that Petitioner had nine serious disciplinary violations while in prison. Id. Based on this evidence, the court concluded there was "some evidence" to support the Board's finding that Petitioner presented a current unreasonable risk of danger to society and was unsuitable for parole. See Doc. #7-4 at 2.

Based on the entire body of evidence presented at Petitioner's October 29, 2007 parole suitability hearing, which included consideration of Petitioner's social history, past and present mental state, past criminal history, the base and other commitment offenses, including behavior before, during and after the crime, and his past and present attitude toward the crime, the Court cannot say that the state court's approval of BPH's decision to deny Petitioner parole was an unreasonable application of the California "some evidence" standard, nor that it was based on an unreasonable determination of the facts in light of the evidence. See Hayward, 603 F.3d at 563; Cal. Code Regs. tit. 15, §§ 2402(b), (c)(1) (heinous, atrocious and cruel nature of commitment offense demonstrates unsuitability); (c)(3) (unstable social history demonstrates unsuitability); (c)(6) (serious misconduct while in prison demonstrates

---

[2] Here, the state appellate courts summarily denied Petitioner relief; the state superior court was the highest state court to address the merits of Petitioner's claim in a reasoned decision. It is that decision, therefore, that the Court analyzes. See LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000); Williams v. Rhoades, 354 F.3d 1101, 1106 (9th Cir. 2004) (federal court may look to any lower state court decision that was examined, and whose reasoning was adopted, by the highest state court to address the merits of a petitioner's claim).

unsuitability).  Petitioner therefore is not entitled to federal habeas relief.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is DENIED. Further, a certificate of appealability is DENIED.  See Hayward, 603 F.3d at 554–55. Petitioner has failed to make "a substantial showing of the denial of a constitutional right." Id. (citing 28 U.S.C. § 2253(c)(2)).  Nor has Petitioner demonstrated that his claim is "debatable among reasonable jurists."  See Hayward, 603 F.3d at 555.

The Clerk of Court shall terminate all pending motions as moot, enter judgment in accordance with this Order and close the file.

IT IS SO ORDERED.

DATED      Aug. 25, 2010

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.08\Conner-08-5871-bph denial-post hayward.wpd